**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 16-2247**

JEANNE T. BARTELS, by and through William H. Bartels, Attorney-in-Fact; JOSEPH J. PFOHL, Executor of the Estate of Bernice C. Pfohl; CLAIRE M. MURPHY, by and through Michele Mullen, Attorney-in-Fact,

Plaintiffs – Appellees,

v.

SABER HEALTHCARE GROUP, LLC; SABER HEALTHCARE HOLDINGS, LLC; FRANKLIN OPERATIONS, LLC, d/b/a Franklin Manor Assisted Living Center; SMITHFIELD EAST HEALTH HOLDINGS, LLC, d/b/a Gabriel Manor Assisted Living Center; QUEEN CITY AL HOLDINGS, LLC, d/b/a The Crossings at Steele Creek,

Defendants – Appellants.

**No. 16-2416**

JEANNE T. BARTELS, by and through William H. Bartels, Attorney-in-Fact; JOSEPH J. PFOHL, Executor of the Estate of Bernice C. Pfohl; CLAIRE M. MURPHY, by and through Michele Mullen, Attorney-in-Fact,

Plaintiffs – Appellees,

v.

SABER HEALTHCARE GROUP, LLC; SABER HEALTHCARE HOLDINGS, LLC; FRANKLIN OPERATIONS, LLC, d/b/a Franklin Manor Assisted Living Center; SMITHFIELD EAST HEALTH HOLDINGS, LLC, d/b/a Gabriel Manor Assisted Living Center; QUEEN CITY AL HOLDINGS, LLC, d/b/a The Crossings at Steele Creek,

Defendants – Appellants.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. Terrence W. Boyle, District Judge. (5:16-cv-00283-BO)

Argued: September 13, 2017                    Decided: January 23, 2018

Before TRAXLER, DIAZ, and FLOYD, Circuit Judges.

Vacated and remanded by published opinion. Judge Traxler wrote the majority opinion in which Judge Diaz joined. Judge Floyd wrote an opinion concurring in part and concurring in the judgment.

**ARGUED:** Mary Beth Hickcox-Howard, WILLIAMS & CONNOLLY LLP, Washington, D.C., for Appellants. Stephen Jay Gugenheim, GUGENHEIM LAW OFFICES, P.C., Raleigh, North Carolina, for Appellees. **ON BRIEF:** Steven B. Epstein, POYNER SPRUILL LLP, Raleigh, North Carolina; Edward J. Bennett, WILLIAMS & CONNOLLY LLP, Washington, D.C., for Appellants. Daniel K. Bryson, Matthew E. Lee, Jeremy R. Williams, WHITFIELD BRYSON & MASON LLP, Raleigh, North Carolina; Andrew D. Hathaway, GUGENHEIM LAW OFFICES, P.C., Raleigh, North Carolina, for Appellees.

TRAXLER, Circuit Judge:

Saber Healthcare Holdings, LLC, sits at the top of a family of wholly owned limited-liability companies that own and operate dozens of assisted-living facilities and nursing homes in several states, including North Carolina. Current and former residents of one of Saber's North Carolina assisted-living facilities brought a putative class action in North Carolina state court against Saber Healthcare Holdings and certain of its subsidiaries, alleging that the defendants failed to deliver the contractually promised care and failed to comply with certain state law requirements. After the defendants removed the case to federal court, the district court granted the plaintiffs' motion to remand the case to state court, concluding that a forum-selection clause in the residents' contracts required the case to proceed in state court. The defendants appeal, arguing that the case was properly removed under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109–2, 119 Stat. 4 (codified in scattered sections of Title 28, United States Code), and that, in any event, the forum-selection clause does not prohibit removal. As we will explain, we vacate and remand for further proceedings and factual development on the question of whether all of the defendants are bound by the forum-selection clause contained in the contracts executed by the plaintiffs.

I.

The defendants in this case are Saber Healthcare Holdings, LLC ("Saber"); Saber Healthcare Group, LLC; Franklin Operations, LLC; Smithfield East Health Holdings, LLC; and Queen City AL Holdings, LLC. Saber is the sole member of each of the other defendant LLCs.

3

As is relevant to this case, Saber and its related companies operate three assisted-living facilities in North Carolina: Franklin Manor Assisted Living Center, which is operated by Franklin Operations, LLC, and located in Franklin County; Gabriel Manor Assisted Living Center, which is operated by Smithfield East Health Holdings, LLC, and located in Johnston County; and The Crossings at Steele Creek, which is operated by Queen City AL Holdings, LLC, and located in Mecklenburg County. Each facility requires its residents to sign an "Assisted Living Residency Agreement," which includes a forum-selection clause providing that "the county in which the Facility is located shall be the sole and exclusive venue for any dispute between the parties, including, but not limited to, litigation, special proceeding, or other proceeding between the parties that may be brought, arise out of or in connection with or by reason of this Agreement." J.A. 160.

The plaintiffs are the representatives of three then-current and former residents of Saber facilities -- Jeanne Bartels, Bernice Pfohl, and Claire Murphy. Bartels was a resident of Franklin Manor for a few weeks in October and November 2015, and Pfohl was a resident of Franklin Manor from February 2014 through August 2015. Murphy was a resident of Franklin Manor from April 2015 through January 1, 2016. After spending a month in a rehabilitation hospital, Murphy was a resident of Gabriel Manor from February 4 through April 21, 2016. On April 21, 2016, Murphy returned to Franklin Manor, where she resided until sometime after this action was filed.[1]

---

[1] Murphy voluntarily dismissed her claims on October 25, 2016, and is no longer a party to this action.

4

The plaintiffs filed this action on May 9, 2016, in Franklin County, North Carolina. The plaintiffs alleged that the defendants are all alter egos of each other and that they failed to provide the level of staffing necessary to satisfy North Carolina statutory requirements or to meet the basic needs of its residents. According to the plaintiffs, the defendants deliberately chose to understaff the facilities in order to "increase profits at the expense of its residents with Alzheimer's and dementia." J.A. 38.

The plaintiffs sought a preliminary injunction, and the hearing on that motion took place on May 16 and 19, 2016, in courthouses located in Granville County and Wake County. At the conclusion of the hearing, the state court indicated that it would grant the injunction and appoint a monitor to ensure compliance with state law, but the court made it clear that the injunction would be effective on entry of a written order. *See* D. Ct. docket entry #34, exh. 2, pp. 5-6 ("[C]ome up with an order that memorializes that and I'm looking at it and either sign it or modify it as I think is appropriate and *I'll make it effective when the order is signed*." (emphasis added)). On May 24, the Saber defendants removed the case to federal court. A few days after removal, the state court entered a written order granting the injunction. The order stated that the injunction "was entered in open court on May 19, 2016 and is signed . . . on this, the 27th day of May 2016." J.A. 234. Recognizing that the case had been removed, the state court stayed the injunction "unless and until the case is remanded to this court for further proceedings." J.A. 235.

The plaintiffs subsequently moved to remand, arguing that the forum-selection clauses in the contracts required the action to be prosecuted in Franklin County. Because there is no federal courthouse in Franklin County, the plaintiffs contended that the

5

defendants were contractually precluded from removing the action. The defendants argued that the absence of a federal courthouse in Franklin County did not preclude removal and that, in any event, the only defendant bound by the forum-selection clause was Franklin Operations, LLC. Because CAFA authorizes removal by a single defendant and does not require the consent of other defendants, any of the other defendants were free to remove the case.

The district court granted the motion to remand. The court concluded that the forum-selection clause required the action to proceed in Franklin County and that the absence of a federal courthouse in Franklin County precluded removal. The court rejected the defendants' argument that only Franklin Operations, LLC, was bound by the forum-selection clause, noting that the plaintiffs alleged that the entities were alter egos and that Saber was the sole member in each entity. This appeal followed.

II.

Before proceeding to the merits, we pause to address our jurisdiction over this appeal. Subject to certain exceptions, appellate review of orders remanding removed cases to state court is prohibited. *See* 28 U.S.C. § 1447(d). The defendants therefore proceeded under the Class Action Fairness Act and timely sought permission from this court to appeal the remand order. *See* 28 U.S.C. § 1453(c) ("[A] court of appeals may accept an appeal from an order of a district court granting or denying a motion to remand a class action to the State court from which it was removed if application is made to the court of appeals not more than 10 days after entry of the order.").

6

The general statutory prohibition against appeals of remand orders, however, applies only where the remand was based on lack of subject-matter jurisdiction or on a timely raised defect in the removal procedure. *See Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 127-28 (1995); *Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 196 (4th Cir. 2008). In this case, the district court did not remand because it lacked subject-matter jurisdiction or because of any defect in the removal procedure.[2] Instead, the court remanded because it concluded that the forum-selection clause effected a waiver of the defendants' right to remove the case to federal court. Consistent with the approach taken in other circuits, this court has concluded that a remand based on enforcement of a forum-selection clause "does not fall within the general prohibition of appellate review

---

[2] There is no real question that the district court had subject-matter jurisdiction over this case. CAFA confers jurisdiction over class actions in which the amount in controversy exceeds $5 million and in which "*any* member of a class of plaintiffs is a citizen of a State different from *any* defendant." 28 U.S.C. § 1332(d)(2)(A) (emphasis added). Under CAFA, unincorporated associations – including limited liability companies – are citizens of the state under whose laws they are organized and of the state where their principal place of business is located. *See* 28 U.S.C. § 1332(d)(10); *Ferrell v. Express Check Advance of SC LLC*, 591 F.3d 698, 705 (4th Cir. 2010). Because the plaintiffs are North Carolina citizens, and Saber Healthcare Group, LLC, is a citizen only of Ohio, CAFA's minimal diversity requirements are met. As to the amount in controversy, the plaintiffs seek to recover the difference between the value of the services the defendants promised and the value of the services actually received, which they contend should be trebled under North Carolina's unfair trade practices act, *see* N.C. Gen. Stat. § 75-16. The defendants alleged in their notice of removal that over the time period addressed in the complaint, the three North Carolina facilities received more than $14 million in payments from residents. Because the plaintiffs do not challenge the defendants' calculations, the defendants adequately established that the amount in controversy exceeds $5 million. *See Dart Cherokee Basin Op. Co. v. Owens*, 135 S. Ct. 547, 554 (2014) ("A defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold.").

7

for remand orders pursuant to 28 U.S.C. § 1447(d)" and thus is "reviewable on appeal." *FindWhere Holdings, Inc. v. Sys. Env't Optimization, LLC*, 626 F.3d 752, 755 (4th Cir. 2010) (collecting cases). The order at issue in this case, therefore, is subject to appellate review under ordinary principles.[3]

## III.

We turn now to the merits of this appeal. There is no question that under CAFA, a single defendant can remove a case without the consent of the other defendants. *See* 28 U.S.C. § 1453(b) ("A class action . . . may be removed by *any defendant* without the consent of all defendants." (emphasis added)); *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1221 (11th Cir. 2007) ("[A]ny one defendant authorized under CAFA to remove the plaintiffs' claims against that defendant . . . may remove the action as a whole, regardless of whether other defendants in the action would be authorized to remove their claims."). Removal was therefore proper under CAFA if any one of the defendants was authorized to remove the case. Accordingly, the questions we must answer are whether the forum-selection clause prohibited removal, and, if so, whether all defendants are bound by the clause.

### A.

As noted, the forum-selection clause contained in the residency agreements states that "the county in which the Facility is located shall be the sole and exclusive venue for

---

[3]    In light of this conclusion, we hereby deny as moot the defendants' § 1453(c) petition requesting permission to appeal the remand order.

8

any dispute between the parties, including, but not limited to, litigation, special proceeding, or other proceeding between the parties that may be brought, arise out of or in connection with or by reason of this Agreement." J.A. 160.

The plaintiffs contend that under the plain language of this clause, all litigation springing from the contractual relationship must be pursued in the county where the facility is located. Thus, if there is a federal courthouse in that county, then removal would be consistent with the contract, because the litigation would still be proceeding in the required county. But if there is no federal courthouse in the designated county, then removal would be inconsistent with the contract, because the litigation would of necessity be proceeding in a different county. The defendants, however, argue that the clause does not preclude removal because the contract does not limit venue to the courts *of* North Carolina – language that is generally understood to require the case to proceed in state court. *See FindWhere,* 626 F.3d at 755. According to the defendants, the forum-selection clause should be understood as permitting removal to the federal court with jurisdiction over the specified county, regardless of whether there happens to be a federal courthouse physically located in that county.

In our view, the plain language of the forum-selection clause compels the conclusion urged by the plaintiffs. The clause states that the county where the facility is located "shall be the sole and exclusive venue" for resolution of disputes between the parties, which unambiguously requires the case to be resolved in Franklin County, North Carolina. Because there is no federal courthouse in the designated county, removal of the case to federal court would mean that the dispute would be resolved in a county other

9

than the one designated by the contract. To accept the defendants' argument would require us to re-write the clause to provide that "the sole and exclusive venue for any dispute between the parties shall be the county in which the Facility is located, *or the county in which a federal courthouse is located that has jurisdiction over the county in which the Facility is located*." This court, of course, may not re-write the contract; our role is limited to enforcing the contract as written.

Although the defendants' argument is supported by a few district court opinions, every circuit court to have addressed this issue has agreed with the plaintiffs. For example, in *Yakin v. Tyler Hill Corp.*, 566 F.3d 72 (2d Cir. 2009), the forum-selection clause provided that "the venue and place of trial of any dispute that may arise out of this Agreement . . . shall be in Nassau County, New York." *Id.* at 74. The defendant removed the state-court action to federal court, even though there was no federal courthouse in Nassau County. The Second Circuit affirmed the district court's decision to remand the case:

> We perceive no ambiguity in the forum selection clause. A reasonable person reviewing the statement "It is agreed that the venue and place of trial of any dispute that may arise out of this Agreement . . . shall be in Nassau County, New York," would necessarily conclude that the parties intended that litigation take place in an appropriate venue in Nassau County and that this commitment was not conditioned on the existence of a federal courthouse in that county.
>
> . . . .
>
> Given that the forum selection clause contains only obligatory venue language, we will effectuate the parties' commitment to trial in Nassau County. *Had there been a federal court located in Nassau County at the time of this litigation, remand would have been improper*. But there was none. In addition, contrary to Tyler Hill's contention, no reasonable

10

reading of the clause permits the interpretation that the parties had agreed to trial in Suffolk County or Brooklyn because those courthouses were within the Eastern District of New York, which spans an area including Nassau County. Had the parties intended to provide for that result, they could, of course, have drafted a different forum selection clause that communicated that intent. We are free only to interpret and enforce the clause as written.

*Id.* at 76-77 (emphasis added); *accord Simonoff v. Expedia, Inc.*, 643 F.3d 1202, 1207 (9th Cir. 2011) ("[W]e hold that a forum selection clause that vests 'exclusive jurisdiction and venue' in the courts 'in' a county provides venue in the state and federal courts *located in that county*." (emphasis added)); *Alliance Health Grp., LLC v. Bridging Health Options*, LLC, 553 F.3d 397, 400 (5th Cir. 2008) ("[T]he clause at hand, providing for venue in a specific county, permits venue in either federal or state court, *because a federal courthouse is located in that county*." (emphasis added)); *Global Satellite Commc'n Co. v. Starmill U.K., Ltd.*, 378 F.3d 1269, 1272 (11th Cir. 2004) ("The contract provision, 'Venue shall be in Broward County,' . . . is most reasonably interpreted to mandate venue in Broward County, and Broward County alone. The provision, however, does not designate any particular forum, such that a suit either in the Seventeenth Judicial District of Florida, or in the Fort Lauderdale Division of the Southern District of Florida, *both of which are located in Broward County*, would satisfy the venue requirement." (emphasis added)). Although the language of the clause in this case does not precisely mirror that in the cases cited above, we do not believe the difference in the contractual language requires a different interpretation.

In support of their argument, the defendants rely on our decision in *FindWhere*. In that case, the parties were subject to a contractual forum-selection clause that required

11

litigation to proceed "exclusively in . . . the courts of the State of Virginia." *FindWhere*, 626 F.3d at 754. After removal, the district court remanded the case to state court, agreeing with the plaintiffs that the forum-selection clause precluded removal. Affirming the district court's order, the *FindWhere* court explained the differences between forum-selection clauses that impose a *geographical* venue limitation and those that impose a *sovereignty* limitation:

> [F]orum selection clauses that use the term "in a state" express the parties' intent as a matter of geography, permitting jurisdiction in both the state and federal courts of the named state, whereas forum selection clauses that use the term "of a state" connote sovereignty, limiting jurisdiction over the parties' dispute to the state courts of the named state.

*Id.* at 755 (internal alterations omitted). Because the forum-selection clause at issue required the litigation to proceed in the courts "of the State of Virginia," we held that removal was improper, as "federal courts are not courts 'of' the State of Virginia." *Id.*

The defendants seem to read *FindWhere* as holding that where a geographically limited forum-selection clause is at issue, venue is always proper in either state or federal court. *See* Brief of Appellants at 24-25. We disagree. The court in *FindWhere* did not hold venue was proper in state or federal courts in *all* cases involving geographically focused forum-selection clauses; the court held that where a forum-selection clause limits litigation to courts in a *state*, then the case can proceed in any court located *in that state*. *See id.* The holding in *FindWhere* is thus consistent with the holdings of the out-of-circuit cases cited above -- forum-selection clauses using geographical limitations permit the case to be filed with any court, whether state or federal, that is *located within the contractually described geographical boundary*. In this case, the forum-selection clause

12

is one focused on geography, not sovereignty. Accordingly, under the rule set out in *FindWhere*, this case is properly filed with and resolved by any court that is located in Franklin County. Because there is no federal court in Franklin County, the plain language of the forum-selection clause precludes removal.

The defendants, however, insist that this reading of the clause does not "square[] with how North Carolina courts operate." Brief of Appellants at 27. They note that the state judicial district encompassing Franklin County includes other counties and that pre-trial proceedings on a case filed in Franklin County might sometimes be conducted in one of the other counties in the district. (Indeed, that happened in this case -- hearings on the plaintiffs' request for a preliminary injunction were conducted in two other counties.) Thus, because there is no guarantee under North Carolina practice that all proceedings in a case filed in Franklin County will actually occur in Franklin County, the defendants contend that the clause cannot be understood as limiting venue to the courts of Franklin County. We disagree.

The parties to the residency agreement must be presumed to have been familiar with the operation of the state court system when they agreed to the forum-selection clause. *See, e.g.*, *Fraternal Order of Police Lodge No. 89 v. Prince George's Cty.*, 608 F.3d 183, 191 (4th Cir. 2010) ("[P]arties are presumed to contract against the backdrop of relevant law. . . ."). Accordingly, the parties to the Franklin Manor contracts agreed that disputes must be resolved in Franklin County, while at the same time recognizing that pretrial proceedings might take place in another county. Under these circumstances, it is clear that the purpose of the forum-selection clause was to dictate which county court

13

would have jurisdiction over the case as a whole, without regard to which county courthouse might play host to a given hearing. That is, Franklin County may be the "sole and exclusive venue" for resolution of the dispute as a whole, as required by the contract, notwithstanding the fact that a few preliminary hearings might be held elsewhere. Indeed, the record here shows just that – the case retained its Franklin County flavor even when the hearing was held outside Franklin County. *See* J.A. 209 ("I've gotten commissioned by the chief justice to hold this hearing in Wake County even though it's a Franklin County case."). The operation of the North Carolina court system thus provides no basis for ignoring the plain language of the forum selection clause.

B.

The defendants argue that even if the forum-selection clause is properly read as requiring the litigation to proceed in state court, the plaintiffs are, for various reasons, not entitled to enforce it.

(1)

The defendants first contend that the plaintiffs waived the forum-selection clause by including claims against the Gabriel Manor and Crossings defendants, whose contracts require residents to sue in the counties where those facilities are located. The defendants contend that since the plaintiffs claim that all defendants must be bound by the Franklin Manor contract, then all defendants and plaintiffs would also be bound by the Gabriel Manor and Crossings contracts. The defendants therefore argue that the plaintiffs' decision to proceed in Franklin County violates the conflicting forum-selection clauses of the Gabriel Manor and Crossings contracts. In the defendants' view, the plaintiffs have

14

not shown "why they should be entitled to insist upon enforcement of the Franklin Manor clause *in particular*, in derogation of the other Defendant facilities' clauses." Brief of Appellants at 36.

The plaintiffs are entitled to insist upon enforcement of the forum-selection clause of the Franklin Manor contracts *because those are the contracts signed by the plaintiffs*. The named plaintiffs do not sue the Gabriel Manor and Crossings defendants for breaching contracts the plaintiffs did not execute; instead, the plaintiffs sue these defendants as alter egos of the defendants who breached the contracts the plaintiffs *did* execute -- the *Franklin Manor* contracts. At the time this action was filed, all of the plaintiffs were residents of Franklin Manor and had signed contracts requiring litigation to be pursued in Franklin County. Because none of the plaintiffs had an active contract with Gabriel Manor or Crossings, they could not be bound by forum-selection clauses in unexecuted form contracts.[4] The plaintiffs therefore did not breach an operative forum-selection clause, and the defendants' argument on this point fails.

(2)

---

[4] Plaintiff Claire Murphy was party to a contract with Gabriel Manor during her two-month stay there in early 2016. Although each facility requires each resident to sign a contract, *see* J.A. 155, the record does not include the contract signed by Murphy when she returned to Franklin Manor in April 2016. Nonetheless, the complaint alleges that each plaintiff signed a Franklin Manor residency agreement, *see* J.A. 44, and we must accept that allegation as true for purposes of this appeal. Since each agreement terminates upon the execution of a new one, J.A. 159, we must assume that Murphy's contract with Gabriel Manor terminated upon her execution of the Franklin Manor contract.

15

The defendants also contend that the plaintiffs waived the forum-selection clause by including non-contract claims in their complaint. The plaintiffs asserted a claim for injunctive relief based on violations of N.C. Gen. Stat. § 131D-21, which sets out a declaration of rights for residents of "adult care homes." The Saber defendants argue that the statutory claim does not fall within the scope of the forum-selection clause and that the plaintiffs therefore waived their rights under the forum-selection clause.

This argument is without merit. The Franklin Manor forum-selection clause applies to claims that "arise out of or *in connection with* or by reason of this Agreement." J.A. 160 (emphasis added). The "in connection with" language broadens the scope of the clause beyond pure contract claims and extends it to "every dispute between the parties having a *significant relationship to the contract* regardless of the label attached to the dispute." *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 321 (4th Cir. 1988) (emphasis added); *see Long v. Silver*, 248 F.3d 309, 316 (4th Cir. 2001) (clause requiring arbitration of disputes "arising out of or in connection with" the contract between the parties had broad scope). The statutory declaration of rights imposes standards that an assisted-living facility must meet when providing services to its residents, and it is the contract with the resident that obligates the facility to provide those services in the first instance. The claims that the Saber defendants violated the statute thus bear a significant relationship to the residency agreements and fall within the scope of the forum-selection clause. *See Long*, 248 F.3d at 318 (concluding that breach of fiduciary duty claim fell within scope of clause requiring arbitration of disputes connected with 1972 Agreement because "Long's breach of fiduciary duty claim arises

16

only by virtue of Long's status as a shareholder, and the 1972 Agreement creates Long's status as a shareholder").

(3)

Finally, the defendants argue that the plaintiffs waived their right to enforce the forum-selection clause by requesting and attending hearings that were held outside Franklin County. Again, we disagree.

A party may expressly waive a contractual right, or it may waive the right impliedly, through "acts or conduct that naturally lead the other party to believe that the right has been *intentionally* given up." *Patterson v. Patterson*, 529 S.E.2d 484, 492 (N.C. Ct. App. 2000) (internal quotation marks omitted). The intent to waive must be clear, as conduct with ambiguous meaning will not support a waiver defense. *See Hassett v. Dixie Furn. Co.*, 425 S.E.2d 683, 687 (N.C. 1993).[5] In this case, the plaintiffs requested that the first preliminary-injunction hearing be held outside Franklin County (but within the same judicial district), and they consented to the hearing continuing in another county outside the district. In the view of the defendants, that conduct amounts to a waiver of the Franklin Manor forum-selection clause. As discussed above, however, the parties agreed to the forum-selection clause with the knowledge that, under North Carolina practice, preliminary hearings might be held outside Franklin County. Because the

---

[5] Because the parties do not contend that there is any meaningful difference between state and federal law on the kind of conduct necessary to establish a waiver of a contractual right, we do not decide whether a claim of waiver of a forum-selection clause is governed by state or federal law.

17

plaintiffs' request for and consent to two out-of-county hearings in order to expedite their request for a preliminary injunction is in no way inconsistent with the forum-selection clause, the plaintiffs did not waive their right to enforce the clause.

IV.

Having concluded that the operative forum-selection clause precludes removal to federal court and that the plaintiffs did not waive their right to enforce the clause, we turn now to the question of which defendants are bound by the clause. As previously noted, unanimity is not required for removal under CAFA; a single defendant may remove a case. Accordingly, unless all of the Saber defendants are bound by the forum-selection clause contained in the Franklin Manor residency agreements, removal was proper.

The plaintiffs alleged in their amended complaint that all defendants are liable because each individual defendant is an alter ego of the other, and the complaint includes a list of factors relevant to the alter-ego analysis. *See Glenn v. Wagner*, 329 S.E.2d 326, 330-31 (N.C. 1985) (listing factors relevant to alter-ego question). In granting the motion to remand, the district court did not address the unilateral-removal issue, nor did it explicitly conclude, as a factual matter, that the various entities were alter egos of each other. Nonetheless, the court did find the plaintiffs' alter-ego allegations sufficient to reject the defendants' argument that the plaintiffs made the case removable by suing Saber entities who were not signatories to the residency agreements.

On appeal, the defendants contend that the district court erred in its approach to the issue. Relying primarily on *Hugel v. Corporation of Lloyd's*, 999 F.2d 206 (7th Cir. 1993), the defendants contend that the non-signatory defendants can be bound by the

18

Franklin Manor clause only if their "*conduct* is sufficiently related *to the contract dispute* that the [non-signatory] third party could foresee that it would be bound by the contract." Brief of Appellants at 19; *see Hugel*, 999 F.2d at 209 ("In order to bind a non-party to a forum selection clause, the party must be closely related to the dispute such that it becomes foreseeable that it will be bound." (internal quotation marks omitted)). According to the defendants, the conduct of the Gabriel Manor and Crossings entities is entirely unrelated to any dispute about the provision of services under the Franklin Manor residency agreements, thus making it unforeseeable that the Gabriel Manor and Crossings entities would be bound by the Franklin Manor contracts.

As a preliminary matter, we believe the defendants take too narrow a view of the circumstances under which a non-signatory may be bound by the terms of contract executed by a third party. As we have explained in the arbitration context,[6] if "the charges against a parent company and its subsidiary are based on the same facts and are inherently inseparable, a court may refer claims against the parent to arbitration even though the parent is not formally a party to the arbitration agreement." *J.J. Ryan*, 863 F.2d at 320–21. We have likewise explained that "[w]ell-established common law principles," including estoppel and alter-ego theories, may bind a non-signatory to a contractual clause executed by a third party. *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 416-17 (4th Cir. 2000); *see Arthur*

---

[6] Since arbitration is, "in effect, a specialized kind of forum-selection clause," *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974), these principles are equally applicable to this case.

19

*Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) ("[T]raditional principles of state law allow a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel." (internal quotation marks omitted)); *Adams v. Raintree Vacation Exch., LLC*, 702 F.3d 436, 441 (7th Cir. 2012) ("Piercing the veil remains a possible ground for enforcing a forum selection clause against a party's affiliate, if for example the corporation that signed the contract containing the clause was a mere shell . . . ." (citation omitted)). Accordingly, there are several paths through which all defendants could be bound by the forum-selection clause included in the Franklin Manor residency agreements.

The defendants contend that the plaintiffs bear the burden of proving that all defendants were bound by the Franklin Manor forum-selection clause and that the contract therefore precluded removal. Because the plaintiffs presented no evidence supporting their alter-ego claim, the defendants argue that the plaintiffs failed to carry their burden and that the district court therefore erred by granting the motion for remand.

It is well established that the party removing a case to federal court bears the burden of establishing the court's subject-matter jurisdiction over the case:

> [F]ederal courts, unlike most state courts, are courts of limited jurisdiction, created by Congress with specified jurisdictional requirements and limitations. Accordingly, a party seeking to adjudicate a matter in federal court must allege and, when challenged, must demonstrate the federal court's jurisdiction over the matter. If a plaintiff files suit in state court and the defendant seeks to adjudicate the matter in federal court through removal, it is the defendant who carries the burden of alleging in his notice of removal and, if challenged, demonstrating the court's jurisdiction over the matter. While a defendant filing a notice of removal under 28 U.S.C. §

20

> 1446(a) need only *allege* federal jurisdiction with a short plain statement—just as federal jurisdiction is pleaded in a complaint—when removal is challenged, the removing party bears the burden of *demonstrating* that removal jurisdiction is proper.

*Strawn v. AT&T Mobility LLC*, 530 F.3d 293, 296-97 (4th Cir. 2008) (citations omitted). Accordingly, the defendants, as the parties invoking the jurisdiction of the federal courts, were obligated to demonstrate the existence of subject-matter jurisdiction.

As previously noted, *supra* note 2, the defendants sufficiently established the existence of subject-matter jurisdiction under CAFA. By relying on the plaintiffs' alter-ego allegations, the district court implicitly concluded that the defendants' obligation to establish the propriety of removal also required them to show that they were not alter egos bound by the Franklin Manor residency agreements. We agree with the defendants that the district court erred by placing that burden on them.

While the removing party must demonstrate that jurisdiction exists, a forum-selection clause has nothing to do with subject-matter jurisdiction. An enforceable clause prevents a court from exercising jurisdiction over a case that it would otherwise be authorized to hear, but the existence of the clause does not somehow negate the factual and legal bases establishing the court's jurisdiction. *See Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1289 (11th Cir. 1998) ("[T]he basis upon which the defendants seek dismissal -- namely, that the agreement of the parties prohibits the plaintiff from bringing suit in the particular forum -- is unrelated to the actual basis of federal subject matter jurisdiction -- namely, federal question jurisdiction or diversity of citizenship."). Thus, in the removal context, an enforceable forum-selection clause

21

essentially operates as an affirmative defense to removal -- subject-matter jurisdiction exists, but the forum-selection clause effects a waiver of the defendant's right to ask the court to exercise that jurisdiction. The party asserting an affirmative defense bears the burden of proving it, *see, e.g., Stonehenge Eng'g Corp. v. Emp'rs Ins. of Wausau,* 201 F.3d 296, 302 (4th Cir. 2000), and we see little justification for a different procedure here.

In analogous situations, courts have concluded that where jurisdiction has been shown to exist, the burden rests on the plaintiff to provide a reason for a court to decline to exercise that jurisdiction. For example, in *Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691 (2003), the Supreme Court considered 28 U.S.C. § 1441(a), the general removal statute, which authorizes removal of cases within the original jurisdiction of the district courts unless another statute expressly prohibits removal. The Court held that if "the subject matter of an action qualifies it for removal, the burden is on a plaintiff to find an express exception." 538 U.S. at 698.

Similarly, CAFA itself establishes certain exceptions to the exercise of jurisdiction under the statute, spelling out the circumstances under which the district court may or must decline to exercise jurisdiction. *See* 28 U.S.C. § 1332(d)(3)-(5). Every circuit that has considered the issue has concluded that while the removing defendant bears the burden of showing that CAFA's general jurisdictional requirements are satisfied, the plaintiff has the burden of showing the applicability of one of the exceptions. *See Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1164 (11th Cir. 2006) ("CAFA does not change the traditional rule that the party seeking to remove the case to federal court bears the burden

22

of establishing federal jurisdiction. . . . However, when a party seeks to avail itself of an express statutory exception to federal jurisdiction granted under CAFA, . . . the party seeking remand bears the burden of proof with regard to that exception."); *accord Brinkley v. Monterey Fin. Servs., Inc.*, 873 F.3d 1118, 1121 (9th Cir. 2017); *Mason v. Lockwood, Andrews & Newnam, P.C.*, 842 F.3d 383, 389 (6th Cir. 2016); *Woods v. Standard Ins. Co.*, 771 F.3d 1257, 1262 (10th Cir. 2014); *Westerfeld v. Indep. Processing, LLC*, 621 F.3d 819, 822 (8th Cir. 2010); *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 564 F.3d 75, 78 (1st Cir. 2009); *Kaufman v. Allstate N.J. Ins. Co.*, 561 F.3d 144, 153 (3d Cir. 2009); *Hart v. FedEx Ground Package Sys., Inc.*, 457 F.3d 675, 676 (7th Cir. 2006); *Frazier v. Pioneer Americas LLC*, 455 F.3d 542, 546 (5th Cir. 2006).

Accordingly, given the manner in which a forum-selection clause operates in the removal context, we believe that the plaintiff must bear the burden of demonstrating that the defendant waived its right to remove an otherwise removable case by agreeing to a forum-selection clause. In this case, although the plain language of the Franklin Manor forum-selection clause precludes removal, the question remains whether all of the Saber defendants are alter egos or otherwise bound by the clause. These questions are inherently factual, *see DeWitt Truck Brokers, Inc. v. W. Ray Fleming Fruit Co.*, 540 F.2d 681, 684 (4th Cir. 1976), but the district court made no findings of fact and instead simply accepted the plaintiffs' allegations as true, implicitly placing the burden on the defendants to rebut the allegations. Because the district court placed the burden on the defendants rather than the plaintiffs, the proper course is to vacate the court's order and

remand to allow the district court to reconsider the issue under the correct standard. *Scott v. Cricket Commc'ns, LLC*, 865 F.3d 189, 194 (4th Cir. 2017) ("When a district court fails to make findings of fact because of an erroneous view of the law, the usual rule is that there should be a remand for further proceedings to permit the trial court to make the missing findings" (internal quotation marks omitted)). Given the nature of the alter-ego question, some amount of discovery will likely be required to permit the plaintiffs to gather the evidence necessary to support their claim.[7]

V.

For the foregoing reasons, we hereby vacate the district court's order and remand for reconsideration of the question of whether all of the Saber defendants are bound by the Franklin Manor forum-selection clause.

*VACATED AND REMANDED*

---

[7] The plaintiffs contend that the state court during the preliminary injunction proceedings found that the defendants were alter egos and that these findings of fact should be given binding effect by this court. We disagree. Although the state court's preliminary injunction order seems to treat the defendants as alter egos, *see* J.A. 224-25, 231, we note that findings of fact made when granting a preliminary injunction are not binding at trial, *see University of Texas v. Camenish*, 451 U.S. 390, 395 (1981). In any event, the order was issued after the case was removed, which means that the order is void for our purposes. *See Ackerman v. ExxonMobil Corp.*, 734 F.3d 237, 249 (4th Cir. 2013) ("[T]he [removal] statute deprives the state court of further jurisdiction over the removed case and . . . any post-removal actions taken by the state court in the removed case action are void *ab initio*.").

FLOYD, Circuit Judge, concurring in part and concurring in the judgment:

I fully join all except Part III.A of Judge Traxler's well-reasoned opinion. Although I agree with my colleagues' conclusion that the forum-selection clause at issue forecloses removal to federal court in this case, I do not agree that removal would have been proper if a federal court had been physically located in the county, and I would not have reached that question in this case. Therefore, I concur in part and concur in the judgment, but respectfully write separately as to Part III.A.

I.

Saber Healthcare Holdings, LLC, and its subsidiaries own and operate dozens of assisted living facilities and nursing homes. Three current and former residents of the Franklin Manor Assisted Living Center ("Franklin Manor") filed this putative class action, alleging breach of contract and unfair trade practices arising from defendants' alleged failure to comply with their contractual and statutory obligations to provide services meeting the needs of the residents at Franklin Manor and two other facilities.

Each facility enters into a residency agreement with their respective residents, including the named plaintiffs in this case. Each agreement contains the same language. The forum-selection clause, in pertinent part, reads as follows:

> This Agreement shall be construed in accordance with the laws of the State of North Carolina, and the county in which the Facility is located shall be the sole and exclusive venue for any dispute between the parties, including, but not limited to, litigation, special proceeding, or other proceeding between the parties that may be brought, arise out of or in connection with or by reason of this Agreement.

25

J.A. 160. The plaintiffs filed this action in Franklin County Superior Court pursuant to the Franklin Manor agreement—Franklin Manor is located in Franklin County, North Carolina. The defendants then filed a notice of removal with the Eastern District of North Carolina. Plaintiffs then filed a motion to remand the case to Franklin County Superior Court, contending that the forum-selection clause in Franklin Manor's residency agreement barred removal. The district court granted the motion to remand, holding, as relevant here, that defendants waived their right to removal because the forum-selection clause "limits jurisdiction to the state courts in Franklin County, North Carolina." J.A. 278. Defendants now appeal that determination.

II.

The venue selection clause at issue in this case states that "the county in which the Facility is located shall be the sole and exclusive venue for any dispute between the parties . . . ." J.A. 160. The majority opinion holds that this language creates a geographic limitation such that removal to federal court would be permissible if a federal courthouse were physically located within the county. I respectfully disagree.

I first note that it was unnecessary for my colleagues to reach this question, and I would not have done so. As the majority notes, there is no federal courthouse physically located in Franklin County. It is sufficient under these facts to narrowly hold that the plain language of the forum-selection clause at issue clearly limits venue to the county and not to courts that have jurisdiction over the county, as Saber requests. It is unnecessary to define whether this limitation to "county" is one of geography or

26

sovereignty because either way, removal is precluded here, resolving the issue squarely before the court.

Having reached the question, however, I respectfully disagree with the majority's conclusion that removal would be permitted if a federal court were physically located in Franklin County. In my view, the majority opinion fails to consider the nuanced differences between this contract's language and that of those to which it analogizes.

As the majority opinion explains, this Court's decision in *FindWhere* describes how different clauses discussing venue in terms of a state are commonly interpreted as creating either a geographic or sovereignty limitation on venue.

> [F]orum selection clauses that use the term 'in [a state]' express the parties' intent as a matter of geography, permitting jurisdiction in both the state and federal courts of the named state, whereas forum selection clauses that use the term 'of [a state]' connote sovereignty, limiting jurisdiction over the parties' dispute to the state courts of the named state.

*FindWhere Holdings, Inc. v. Sys. Env't Optimization, LLC*, 626 F.3d 752, 755 (4th Cir. 2010) (second and third alteration in original) (quoting *Doe 1 v. AOL, LLC*, 552 F.3d 1077, 1082 (9th Cir. 2009)); *see also Dixon v. TSE Int'l Inc.*, 330 F.3d 396, 398 (5th Cir. 2003) (per curiam) (holding that the contract language "[t]he Courts of Texas, U.S.A., shall have jurisdiction" precluded federal jurisdiction by explaining that "[f]ederal district courts may be *in* Texas, but they are not *of* Texas" (emphasis in original)).

Several of our sister circuits have applied the same reasoning to conclude that a forum-selection clause that sets venue "in" a county creates a geographic limitation such that venue is permitted in any state or federal court located within that county. *See, e.g.*, *Simonoff v. Expedia, Inc.*, 643 F.3d 1202, 1207 (9th Cir. 2011) ("[W]e hold that a forum

27

selection clause that vests 'exclusive jurisdiction and venue' in the courts '*in*' a county provides venue in the state and federal courts located in that county." (emphasis added)); *Yakin v. Tyler Hill Corp.*, 566 F.3d 72, 76 (2d Cir. 2009) (interpreting the clause "venue . . . shall be *in* Nassau County, New York," as permitting venue in state or federal court within the county (emphasis added)); *All. Health Grp., LLC v. Bridging Health Options, LLC*, 553 F.3d 397, 398, 400 (5th Cir. 2008) (interpreting "venue . . . shall occur *in* Harrison County, Mississippi," and stating that "the clause at hand, providing for venue in a specific county, permits venue in either federal or state court, because a federal courthouse is located in that county" (emphasis in original omitted) (emphasis added)); *Glob. Satellite Commc'n Co. v. Starmill U.K., Ltd.*, 378 F.3d 1269, 1272, 1274 (11th Cir. 2004) (construing the contract provision "Venue shall be *in* Broward County" as permitting venue in the state or federal court within the county because the provision "does not designate any particular forum" (emphasis added)). *But see Excell, Inc. v. Sterling Boiler & Mech., Inc.*, 106 F.3d 318, 321 (10th Cir. 1997) (interpreting the clause "venue shall lie *in* the County of El Paso, Colorado," as creating a sovereignty limitation on venue to state courts (emphasis added)).

The majority's opinion relies on these interpretations of forum-selection clauses that set venue "in" a county to conclude that this clause creates a geographic limitation that would permit venue in a federal court within the county, if such court existed. However, the forum-selection clause at issue here—stating that "the county . . . shall be the sole and exclusive venue"—is missing the operative word "in" that triggers a geographic limitation. J.A. 160. Thus, the majority opinion implicitly concludes that the

28

phrase "venue shall be *in* the county" is materially the same as the phrase "the county *shall be* the venue."

I hesitate to disregard the omission of this operative word. *See Maersk Line, Ltd. v. United States*, 513 F.3d 418, 423 (4th Cir. 2008) (citations omitted) ("[I]n contractual disputes, every word is important."). The Fifth Circuit seems to share this hesitation. In *Alliance Health Group*, the Fifth Circuit held that the clause "venue . . . shall *occur in* Harrison County, Mississippi," created a geographic limitation such that the clause permitted venue in any federal or state court located within that county. *All. Health Grp.*, 553 F.3d at 401 (emphasis in original). In doing so, however, the court expressly acknowledged that a clause's inclusion of the phrase "shall be" and omission of the operative "in" may create a sovereignty limitation rather than merely a geographic one. *Id.* The court stated that "[t]he clause at issue does not state that venue shall *be* some county, which might have suggested an intent to limit venue to a single tribunal. On the contrary it merely says that venue shall exclusively *occur in* Harrison County, a markedly less specific construction." *Id.* (emphasis in original). Consequently, I disagree with the majority's presumption that the clause at issue here is materially the same as those that set venue "in" a particular county.

In my view, the better approach is to look at the plain meaning of the language in *this* clause, and interpret the parties' intentions in stating that the county *shall be* the sole and exclusive venue for litigating disputes. In doing so, I am persuaded that this clause limits venue to state courts located in Franklin County. First, I believe using "county" to describe the venue more likely indicates an intent for the parties to litigate in state courts.

29

In *Excell*, the Tenth Circuit reasoned that the plain meaning of stating venue in terms of a county implied the exclusive use of county courts, i.e., state courts, and thus created a sovereignty limitation because "[f]or federal court purposes, venue is not stated in terms of 'counties.' Rather, it is stated in terms of 'judicial districts.' " *Excell*, 106 F.3d at 321 (citing 28 U.S.C. § 1391). The North Carolina state court system—unlike the federal court system—is discussed in terms of counties, lending further support to the position that the use of "county" implies venue in the state's county courts alone. *See, e.g.*, N.C. Gen. Stat. § 1-82 (setting venue "[i]n all other cases . . . in the county in which the plaintiffs or the defendants, or any of them, reside at its commencement"); J.A. 209 (state court judge explaining that he had "gotten commissioned by the chief justice to hold this hearing in Wake County even though it's a Franklin County case"). Although the majority concludes that "[t]he operation of the North Carolina court system thus provides no basis for ignoring the plain language of the forum selection clause," I submit that it *informs* our interpretation of the plain language of this clause as limiting venue to state courts.

Additionally, we construe ambiguous provisions in contracts against the drafters. *See Maersk Line*, 513 F.3d at 423 ("The basic contract law principle *contra proferentem* counsels that we construe any ambiguities in the contract against its draftsman." (citation omitted)); *Glob. Satellite Commc'n Co. v. Starmill U.K., Ltd.*, 378 F.3d 1269, 1271–72, 1274 (11th Cir. 2004) ("[W]hen ordinary contract principles fail to elucidate a single reasonable interpretation for an ambiguous provision, and instead the provision is subject to opposing, yet reasonable interpretation," "rather than strain to find that one should

30

prevail over another, we must simply construe it against . . . the drafter.") (internal quotation marks & citations omitted). Here, Saber drafted the contract, and the plaintiffs assert that removal is improper because venue in federal court was waived under the forum-selection clause. To the extent that this clause is ambiguous as to whether it creates a geographic or sovereignty limitation on venue, we are compelled to construe the words against Saber and hold that the clause precludes removal. *See id.*

With these considerations in mind, I believe this forum-selection clause should be interpreted to set venue in the state court system, and would hold as much.

III.

For the reasons discussed above, therefore, I would hold that this clause precludes removal in this case based on the use of the phrase "the county." If I reached the broader question of whether this clause permits removal when a federal courthouse is physically located in the county—which I believe can be avoided under the facts of this case—I would hold that the clause limits venue to state courts.